A. J. FINNEGAN v. CAMILE A. BROWN and Others.[1]

November 6, 1903.

Nos. 13,615—(103).

### Settled Case—Conveyances.

It is a proper and commendable practice in making a settled case, or a return to this court on appeal, to state concisely the contents or the legal effect of conveyances of land, instead of setting forth such instruments in full, in all instances wherein there is no dispute over such contents or legal effect.

### Power of Attorney—Identity of Land.

When a power of attorney described the land authorized to be conveyed in accordance with the government survey, and recited that it came into the possession of the principals in the power—husband and wife—as an additional homestead entry, granted by the act of Congress of June 8, 1872 (c. 338, 17 St. 333), as amended by the act of March 3, 1873, c. 274, 17 St. 605, granting additional homesteads to soldiers, and the attorney in fact subsequently conveyed the land described, the identity of the land is sufficiently shown, and the authority of the agent to convey the same properly established.

### Same—Husband and Wife.

When a power of attorney executed by a husband and wife authorizes the agent to convey any and all lands which may come into "his" possession by reason of an additional homestead entry granted by act of June

[1] Reported in 97 N. W. 144.

8, 1872 (c. 338, 17 St. 333), as amended by act of March 3, 1873, of the congress of the United States (c. 274, 17 St. 605), the word "his" refers to the husband.

**Same—Patent—Homestead Law.**

When the power of attorney is of the character above stated, and in a patent from the United States it is recited that the land thereby conveyed was acquired by the patentee pursuant to the act of Congress approved May 20, 1862 (c. 75, 12 St. 392), "to secure homesteads to actual settlers on the public domain, and the acts supplemental thereto," it is to be presumed that the patent was issued under the original act of 1862, or under one of the acts referred to which are supplemental thereto, and a conveyance of the land described in the patent is authorized by the power.

Appeal by defendant A. A. Brown from a judgment of the district court for Redwood county entered pursuant to the findings and order of Webber, J. Reversed, and remanded with instructions.

*S. & O. Kipp,* for appellant.

*Somerville & Olsen,* for respondent.

COLLINS, J.

This action was brought against several defendants to determine adverse claims to a quarter section of land in Redwood county. It was alleged in the complaint that the plaintiff was both the owner in fee and in possession. The answer of the only defendant who appeared —A. A. Brown—was (1) a general denial; (2) ownership in fee, as an affirmative defense; and (3) ownership, as a counterclaim. It was also alleged that Brown was and had been for many years in the actual possession of the premises. The court below, trying the case without a jury, made its findings of fact, wherein it found that the plaintiff was the owner in fee and in possession of the west eighty acres, and that whatever right or title he had to the east eighty acres was acquired by him after the commencement of this action. It found all other allegations of the pleadings false and untrue. Its conclusions of law were that the defendants had no right, title, or estate in or to the west eighty acres, and that plaintiff was the owner and entitled to the possession thereof, and as to the east eighty acres that the action be dismissed. The appeal is from the judgment entered on these conclusions.

For the purpose of this opinion, it is necessary to separate the one hundred sixty acres into two tracts. The east half will be hereinafter referred to as the east eighty acres, and the west half as the west eighty acres. At the trial the plaintiff offered in evidence the record of a patent of the east eighty acres from the United States to John Jacobson, bearing date March 20, 1878, and recorded in the office of the proper register of deeds on April 24 following, but this patent is not made a part of the record before us. He next offered in evidence a quitclaim deed of this tract from the patentee, Jacobson, and his wife, to himself. An objection was made to this deed upon the ground that it was executed and delivered subsequent to the date of the final joining of issue herein, and this objection was sustained.

In behalf of the defendant there was then introduced in evidence a certified copy of the record of a power of attorney, executed by Mr. and Mrs. Jacobson, purporting to authorize one S. D. Peterson to sell, assign, and transfer this east eighty acres, describing it according to government survey,

> "Which came into our possession by reason of an additional homestead entry granted by act of congress of June 8, 1872, as amended by act of March 3, 1873, of the congress of the United States, granting additional homesteads to soldiers and sailors."

. This power of attorney is set out in full in the record, is dated March 18, 1875, and was recorded on May 28 following. Defendant next offered in evidence the record of a warranty deed from Jacobson and his wife, by their attorney in fact, S. D. Peterson, conveying the eighty acres described in the power to Canute A. Brown, of date May 6, 1875, and recorded in the office of the proper register of deeds June 2 of the same year. This was objected to upon the ground that no power or authority had been shown in S. D. Peterson to execute any deed as an attorney in fact for the grantors, John and Caroline Jacobson. It seems that upon the final disposition of the case the court below sustained this objection. Following this, defendant Brown offered and there were received in evidence mesne conveyances through which he claimed and which apparently conveyed to him title to the eighty acres in question.

We must infer from the record that the trial court denied Brown the affirmative relief demanded in his answer as to the east eighty acres upon the ground that the power was insufficient to authorize the attorney in fact therein named to execute any deed in behalf of the Jacobsons. We are at a loss to understand wherein this power of attorney is defective. Counsel for the plaintiff simply call attention in their brief to the fact that the United States patent to the eighty acres is not made a part of the return, and, further, that the deed purporting to have been executed by the Jacobsons, by their attorney in fact, to Canute A. Brown, is also omitted from the record. We see no reason why the settled case or the return to this court should be incumbered by an exact copy of either of these instruments. Their legal effect was clearly stated in the settled case, and, in the absence of any showing or suggestion that this statement as to their contents and the legal effect thereof is unwarranted, we must assume that the patent and the deed were just what they purport to have been in the record—a government patent in due form of the east eighty acres, in which John Jacobson was named as grantee, and a warranty deed in common form, in which Jacobson and his wife, by their attorney in fact, conveyed the identical eighty acres described in the power to Canute A. Brown. The recitals in the case and return are sufficient, and this practice very much abbreviated the record, and is to be commended, instead of meeting with disapproval. As to this eighty acres, we are clearly of the opinion that the court below erred when as to it the action was dismissed. The power of attorney describing the eighty acres according to government survey recited that it came into the possession of the Jacobsons as an additional homestead entry, granted by the act of Congress of June 8, 1872, as amended by the act of March 3, 1873. This statement and the coinciding description in the deed established the identity of the land referred to in the one and conveyed by the other, and made a prima facie case. No further proof that the land in the deed was acquired in the particular manner stated in the power of attorney was necessary, in the absence of testimony to the contrary.

We now come to a consideration of the west eighty. The technical objection above referred to is not made as to it, for the exhibits are set forth in full. Nor do we find it necessary to determine the question of pleading raised upon the argument, but later we shall have occasion to refer to the pleadings. It appears that the plaintiff intro-

duced in evidence the record of a patent from the United States to Moe, the pertinent part thereof being in the following words and figures:

> "Homestead Cert. No. 2,618.  Patent.
>
> "Application 8,264.  The United States of America.
>
> "To All Whom These Presents Shall Come, Greeting:
>
> "Whereas, there has been deposited in the General Land Office of the United States a certificate of the Register of the Land Office at New Ulm, Minnesota, whereby it appears that pursuant to the act of congress approved the 20th of May, 1862, to secure homesteads to actual settlers on the public domain and the *acts supplemental thereto,* the claim of Peter Moe has been established and duly consummated in conformity to law for the west half," etc.,

And conveying title thereto to Moe March 20, 1878.  This patent was duly recorded in Redwood county April 24, 1878.

We have italicized a few words in the above excerpt from the patent for the purpose of easy reference, and call particular attention to the same.  The plaintiff also introduced in evidence a quitclaim deed of this tract of land, in which Moe and his wife were named as grantors, and himself as grantee, bearing date November 12, 1895, but not recorded until November 26, 1898, some three years after its execution, and, as we understand it, several months after the commencement of this action. It was through this patent and the quitclaim deed that plaintiff asserted title.

Defendant Brown then introduced in evidence a power of attorney whereby and wherein Moe and his wife made and appointed S. D. Peterson

> "Their true and lawful attorney for them and in their name, place and stead do hereby authorize the said S. D. Peterson to take possession of and sell, assign and transfer any and all lands that may come into his possession by reason of an additional homestead entry granted by act of June 8, 1872, as amended by act of March 3rd, 1873, of the congress of the United States granting unto said attorney full power to perform everything whatsoever required and necessary to be done as they might or could do if personally present without revocation."

This instrument was duly recorded prior to the execution and delivery of a warranty deed, also introduced in evidence, executed and delivered May 6, 1875, and recorded June 3 of the same year, whereby Moe and his wife, by S. D. Peterson, their attorney in fact, granted, bargained, sold, and conveyed unto Canute A. Brown the eighty acres in question, and wherein it was recited that the land described and set forth in the deed came into the possession of the grantors

> "As an additional homestead entry under and by virtue of an act of congress approved June 8, 1872, as said act was amended by an act approved March 3rd, 1873, being an act giving additional homestead to honorably discharged soldiers and sailors of the late Rebellion."

He also introduced in evidence mesne conveyances through which Canute A. Brown's title was conveyed to him.

It will be noticed that in the patent it was stated that the claim of Moe to the eighty acres had been established and duly consummated in conformity with the act of May, 1862, to secure homesteads to actual settlers on the public domain, and the "acts supplemental thereto." One of the acts supplemental to the original homestead act of May, 1862, was that of June 8, 1872, and another was the amendment of March 3, 1873, both known as "Additional Soldier's Homestead Acts." The first of these was entitled an act "to enable honorably discharged soldiers and sailors, their widows, and orphan children, to acquire homesteads on the public lands of the United States," while the other was entitled an act "to amend an act relating to soldiers' and sailors' homesteads." The statute under which Mr. Moe, as a discharged soldier or sailor, could acquire an additional homestead, was that last referred to—the law of March 3, 1873—and it was this additional homestead, and no other, that Mr. Peterson was authorized to sell, assign, and transfer. Reference was expressly made to all acts supplemental to the original homestead act in the patent of the United States, and this reference included the amendment of 1873. The patent, which is the highest and best evidence of title to the land therein described, was sufficient to establish the claim, there being no dispute over the fact that the eighty acres in question was entered as an additional homestead, and under the acts referred to in the power of attorney.

90 M.—26

The purpose of these recitals as to the homestead law is seen by an examination of section 4 of the original act (Act May 20, 1862, c. 75, 12 St. 393), which provides that no lands acquired under the same shall become liable to the satisfaction of any debt contracted prior to the issuance of the patent therefor. The recital in the patent is notice to all of the exemption, and it is also presumptive evidence that the patent is issued either under the original act, or under some of the subsequent amendatory and supplemental acts which really have become and are considered by the general government as part thereof. The power of attorney fully authorized the conveyance of any tract of land which Mr. Moe might acquire under the 1873 act before mentioned. The patent sufficiently identified the tract therein described and subsequently conveyed as entered and acquired under that act.

Counsel for the plaintiff make the point that the authority contained in the power was to sell, assign, and transfer lands which might come into his possession, etc. Evidently this word "his" was used with reference to Mr. Moe. The intent is obvious, and the power granted was to convey the land which should come into the possession of Moe, not that which might be possessed by the attorney in fact, Peterson. Holding, as we do, that the legal title was in defendant Brown long before the quitclaim deed upon which plaintiff relies was executed and delivered, we have no occasion to go into the contention of defendants' counsel that plaintiff was not a bona fide purchaser of this land, and that in obtaining the deed from Moe and his wife he was guilty of fraud and deceit. We will say, however, that the testimony was abundant to warrant a finding that Finnegan was not a purchaser in good faith, for two reasons: (1) He was sufficiently informed by Moe at and prior to the time he secured the deed that the eighty acres had previously been conveyed by Peterson, as the attorney in fact of himself and his wife, to a third person; that Moe had no claim to it; that it was not his to convey; and (2) at the time of the execution of this deed Mr. Hibbison was in actual possession of the whole one hundred and sixty acres under a contract for the purchase thereof entered into in 1892 between himself and defendant Brown. This possession was ample notice to Finnegan of the rights of the parties to the contract, and, with such notice, he could not be an innocent purchaser.

The judgment must be reversed, but the present findings will not sup-

port a decree for the defendant Brown as to either eighty, and therefore the cause must be remanded, with directions to the court below to make findings in consonance with the views herein expressed, or upon proper motion made therefor, and, in its discretion, to grant a new trial.

Judgment reversed.